The first matter is Herman v. Carbon County. Mr. Donaldson. Good morning. May it please the Court, Your Honor, my name is David M. Donaldson and I represent the Court Administrator of the Court of Common Pleas of Carbon County. If necessary, I would like to reserve three minutes for rebuttal. The Court Administrator is entitled to qualified immunity because, first and foremost, the complaint, which we must assume is true at this stage of the proceedings, alleges no actions taken by the Court Administrator, let alone any actions by her that violated clearly established rights of the jury court. So your position is that it was the judge that made whatever actions that are complained of here? Yes. And the Court Administrator was simply carrying out the direction, or implementing the judge's and the salary board's decision? Exactly. And, in fact, there are no allegations in the complaint even along those lines in terms of the Court Administrator. That, in fact, is what happens. She follows the directions of the President and Judge, keeps the time sheets, assigns the work to the Court of Employees. But there's nothing here about anything else other than that. This case is, as Your Honor said, not about my client, the Court Administrator. It is about the Carbon County Court of Common Pleas President and Judge's exercise of control over what he sees as court employees. You make a large point of the timing of the statement that was made, whether or not it was speech of public concern or simply relating to her own job. I want to make sure that we understand what was said when, and when the decision was made by the President, Judge, and the salary board. The allegations in the complaint, if I understand Your Honor's question, you're asking me to skip for the time being the public concern, the St. Garcia citizen issue, and go to the causation issue? You can certainly do that. Just at some point, I'd like you to address the timing. As I said, this case is not about my client, the Court Administrator, but about the President and Judge's exercise of control over what he views as court employees. Maybe you can stop there for just one second. Isn't that really a factual issue as to who is really responsible here? No, these are pure issues of state law. You're just saying that your client is not the one who is responsible, it's somebody else. That comes from the complaint, which is all we have at this point. The allegations in the complaint over and over again are about what the President and Judge did, what the elected jury commissioners did, and what the jury clerk did. The only time the Court Administrator is mentioned in the complaint is when the plaintiff takes issue with the exercise of control under state law. So your view is whether or not Brewster is engaged in the conduct that she is accused of is a legal matter, not a factual matter? Yes, exactly. Wasn't the Court Administrator the supervisor of Ms. Herman? The immediate, day-to-day supervisor. And as supervisor, did she have control of where her office would be? She had control of where her office would be, the work that she would do, who she would interact with, how she would do that work, on a day-to-day basis in consultation with the President and Judge. And Ms. Herman claims that she was placed in a windowless closet in retaliation for her protected speech. Isn't that right? That's one of the allegations that she does make. And if Ms. Brewster had charge of putting her in that closet, isn't she then liable? Only if, and there are a lot of ifs before we get to that point, only if she spoke as a citizen, not an employee, and only if she spoke on a matter of public concern, and only if she spoke before any of this took place. And the answers to all of those questions are no. First of all, this inherently is about the struggle over whether the court controls court employees or these elected jury commissioners control employees. The jury clerk completely supported supervision by her of the elected jury commissioners in opposition, in Garcia's language, to the mission of the President and Judge, which is to make sure that court employees all operate under the mission of the President and Judge. Therefore, she spoke not as a citizen blowing the whistle on some kind of fraud or wrongdoing. She spoke as an employee who was not happy with the mission. If I could be permitted an analogy, and it's happening a lot in the courts right now because of the sea change in the criminal justice system, more and more judges are taking the bench that have taken the view that rehabilitation, to a large extent, has not worked with hardened criminals, and therefore more severe sentences need to be imposed. They inherit very often a staff of probation officers who have been there for 20, 25 years or more, who grew up, if I may say, under the rehabilitative mode, and they still see benefit to that, and they resist the President and Judge's mission, and the Judge's mission, which is to look at these more serious cases in a more punitive than rehabilitative phase. They speak out regularly about those issues. I believe that Garcia and the circuit courts which have construed Garcia since then have taken the view that these kinds of internal employment issues, when an employee speaks on them, are not speech as a citizen. So we don't get to, is it a matter of public concern? Was there causation? Was there retaliation? We don't even get to those issues because, in fact, in Garcia itself, there really was an implicit concession that what he spoke about was of public concern because most everything in government is anymore. Citizens have a great interest in what happens in government. And there was really an implicit concession in Garcia that there was a retaliation. It may have been very much because of what he did. Supervisors react to what employees do, but they're not labeled as First Amendment retaliators when they're operating as any other employee would do and supervising the job. Why weren't the comments that Herman made matters of public concern, specifically the December letter that she wrote and the expression of support for the two jury commissioners that spoke about problems in the jury system? Okay, assuming that she spoke as a citizen, the reason that they're not matters of public concern are because, first and foremost, they still relate totally to the job and the internal workings of the job. And the public concern analysis speaks to, does the speaker inform the public debate? The jury commissioners did that very often and fully by having press conferences, by speaking to the media, by writing letters to the editor. She supported them. There's no case law that would establish that there's a clearly established right to support who you want to supervise you and therefore insulate yourself from any supervision. My question related to public purpose, the letter I might agree with you is questionable, but what about her expressions of support for the jury commissioners that were discussing irregularities in the jury selection system? Why isn't that a matter of public concern or public interest? Well, first of all, I would say it's not a matter of public concern because it is so related to her immediate situation of who supervises her. But, as I said, we don't get to the issue of public concern if she didn't speak as a citizen. And the problem with the things that happen later, such as the letter in December, is we get into right on its face of the complaint a causation problem. The precipitating event, even if one just reads the complaint, was the president judge's recommendation that her hours of employment be reduced. Then the jury commissioners had their meeting without the judge present and voted against him. He went forward with the recommendation, and then just before the scheduled meeting at the beginning of January, the attorney wrote the letter saying, please rescind, interesting word, please rescind your decision. There was no obligation at that point because she had spoken out. If I may be permitted an analogy, an employer announces to me, I'm fired. I go and conduct a press conference lambasting the employer. The employer goes ahead, puts through the paperwork, and fires me, and I see the employer saying he violated my First Amendment rights because I spoke out. That's what happened here. Everything was precipitated by the president judge first making the recommendation that the hours be reduced, and then not at any point rescinding them. I don't disagree that the jury commissioners themselves had a right to speak publicly about irregularities in the jury system, the jury selection system, or the position of jury clerk. I don't. In fact, I would say that that was exactly their responsibility. How about someone who speaks out in support of those positions? Isn't that entitled to certain protections? Well, I would say that my strongest argument on that, taking from the strongest then back to your point, which is that I found no case that talked in terms of someone's right to support as speech on a matter of public concern, particularly in the context of support for who one wants to be, one's supervisor. We can't divorce it from that context. That's what this was. She herself didn't write letters. She didn't want to conduct press conferences. She didn't blow any whistle. She implicitly supported them, and without getting into motivations, even the complaint admits that the reason for that support is because she, like they, disagreed that the president judge was in charge of the courts. Now, that may be an interesting issue of state law for some people. Although as a perennial attorney for the courts, I'm constantly struggling to make sure that the state courts have control of the state court employees. But at least that is an issue of struggle under state law. But there's nothing there that would say to me that her support somehow rose to the level of speech as a citizen, speech on a matter of public concern, and a clearly established right to support her idea of who should supervise her over the president judge's idea of who should supervise her. We're supposed to be looking at whether or not my client violated a clearly established right in her position. She did what she was obligated to do, follow the president judge's direction. The jury clerk chose her course, which was to support something opposed to that mission. You said that the precipitating event was the president judge's initial decision. As I understand the plaintiff's argument, they're saying the precipitating event was when the salary board adopted the judge's recommendation. Am I correct there? And therefore, the speech that is being complained about occurred after that. Am I accurate in that recommendation or not? They can speak to what it is. That's the last event. That's the final thing that happened. The first thing that happened is the president judge came up with the recommendation that the hours be reduced. The jury, the elected jury commissioners then held a meeting without him present and voted against that recommendation. Then the letter was written right in advance of the scheduled meeting when the final vote was taken by the county commissioners and the president judge to actually put through that reduction. Any speech that occurred was prior to that final meeting, but as the district court held, they held that there was a constitutional obligation to rescind the decision or rescind the recommendation. I find no clearly established law that would say that if an employer makes a decision to do something, that at some point, because someone's speaking out against it, they must rescind that decision. At what time would you say that retaliation occurred in the timeline of events here? When was the alleged retaliation? I've never conceded that there was retaliation, but for the sake of argument, I would say that it would. The only way that it would make sense would be to take the final act, the vote. The vote in January, I think it was January 5th. That would be the act that you could allege came after anything that could be considered a speech. Good. Thank you very much, Mr. Douglasson. Mr. Rousseau. Good morning, Your Honor. Good morning. May it please the court. My name is Donald Rousseau. I represent Mary Alice Herman, the appellee in this case. I think the case really strikes the fundamental essence of the system of public justice in Pennsylvania because jury commissioners are elected by county voters as a separate body. They select the jurors for the county, and there's a state law that basically creates a Chinese wall between the court administration system, which is the court, and the jury commissioners. Mary Alice Herman was a longtime employee of the jury commissioners, and there was a usurpation of her function. Roberta Brewster, the court administration, essentially reached over, took her away from the jury commissioners as an employee, and intended to make her an employee of the court administration system. Doesn't Pennsylvania law say that, though? Say what, Your Honor? That she is an employee, that she's controlled by the judge and the court administration? No, actually, I disagree with my opponent on this, that she was hired by the jury commissioners, who are not part of the court system. They're separate entities, analogous to the county commissioners who are separately elected. The jury commissioners are elected by the voters as an independent body, and you have a crossover of migration of function here. This employee was ripped away from her job, and the retaliation was direct. Tell us what Pennsylvania law is. I thought there was Supreme Court decisional law on this issue. On the jury commissioner question? Not that I'm aware of, Your Honor. The statute remains intact, that there is the, I think it's a biennial election for the three jury commissioners, and they have the right to run their own office. In fact, the complaint mentions a decision of a common police judge on a petition that was filed challenging the jury pool. And this particular judge, as cited in my complaint, said that the, or held that the jury pool, as selected by Roberto Prudenz, it was improperly selected, and he ordered the old pool to be placed intact. And there have been petitions filed in Carver County challenging this selection of jurors as being improper under state law. So this case fundamentally strikes at the heart of the proper administration of justice in Pennsylvania. The legislature determined a long time ago that judges and court administrators should not be selecting jurors for obvious reasons. It should be an independent function. I understand that, but isn't that different from who's going to control the administration of the employees? I don't believe, Your Honor, that anybody's challenging who is going to control the administration of employees. Ultimately, we have to say that Mary Alice Herman, when she got her paycheck, it was a paycheck drawn on county funds. There's a fine line in the Pennsylvania court system. If the court administrator wants to purchase paper or tissues or bottled water for her office, that money basically has to come from county funds. So there is a sort of a transmigration of money between the county system and the state system of justice. So I can't say that there's a real fine line, bright line test here, because you're a state employee under the court administration of justice, but yet you're in a building that's a county building. So when Mr. Donaldson says that Mary Alice Herman is a court employee or a county employee, in that sense she is like any other person working in that courthouse. But yet, to take her away from the jury commissioners and place her under the court administration is a direct assault on the state law. Mr. Donaldson makes, I think, makes a good point about the December letter and its personal nature, but what about the comments that Herman made in support of the jury commissioners? Why is that entitled to protectionist speech? Well, the jury commissioners are the ones that have the complaint against Judge Webb. In fact, I think Mr. Donaldson stated it in the inverse. My client's beef, if you will, is not against Judge Webb. It's against Roberta Brewster, who asserted her authority and claimed to be my client's boss. Now, Roberta Brewster, of course, was supported ultimately by Judge Webb, but the real complaint against Judge Webb was filed by the jury commissioners. Because that was filed with the Judicial Complaint Board, my client expressed her support of the people she always has perceived to be her supervisors, i.e., the jury commissioners. But for Mr. Donaldson to say that the real complaint, the gravamen of Mary Alice Herman's complaint is against Judge Webb, that's simply incorrect because I believe as Judge Sirica pointed out in questioning, who was Mary Alice Herman's supervisor? Well, it was Roberta Brewster, at least the person who purported to be Mary Alice Herman's supervisor. I understand that's your position as to the hierarchy, but the question is, what is the constitutional right here that needs to be protected, and when did it occur? The assertion of support of the First Amendment… I'm asking the question in the context, of course, of the qualified immunity defense. Well, the qualified immunity claim, I believe, falls because Roberta Brewster clearly knew, and Judge Webb clearly knew, that what they were doing was a direct violation of state law, as indicated by the common pleas judge cited in my complaint. They knew what they were doing could not be sanctioned or justified under the state code, and this is exactly why the jury commissioners filed their complaint. The filing of that complaint is protected under the First Amendment. Clearly, if you look at the Sanguigny test that was spelled out by this court in 1992, this is a matter of grave public concern. Nothing is more important than the administration of justice. We have murderers coming to trial in this county, alleged murderers coming to trial in this county, or being tried in front of a jury that may have been selected improperly under state law. There could be simply nothing more important than that. But what effect did this? I understand that her position was changed from full-time, salaried, I gather, to part-time, an hourly employee. Isn't that what we're… isn't that what she's complaining about? That was the final act. That was the act that constituted the retaliation that gave rise to this complaint. That's correct, Your Honor. That was essentially a matter of constructive discharge to be paid $10 an hour for 10 hours of work. That was $100 a week. Obviously, everybody knew she could not survive on that, to be taken from a full-time position down to $100 a week. That was effectively being told to show them the door. She didn't quit, though. She hung in there because she was so close to her retirement that she refused to allow herself to leave, despite being given that drastic diminution in salary and being shunted off into a windowless closet. There's barely anything I can say that's more egomaniac than the way she was treated. And as I cited in the complaint, she was told that this was an act of retaliation. It's not as if she was inferring it or making it up or imagining it. She was directly and expressly told that this was an act of retaliation for her support of that complaint. Mr. Russo, you can help me by separating the two expressions that you claim violated her rights under the First Amendment. One was a letter to the county commissioners, and the other was something else. Would you explain to me what facts were alleged to show a violation of her protected speech in each instance? Well, the complaint integrates a series of expressions that she made publicly throughout the courthouse. She didn't call, as I mentioned in my brief, it's not as if she called a press conference on the steps of the courthouse. But she made it known within the halls of the courthouse that she was fully supportive of the jury commissioners' filed complaint with the judicial board against Judge Webb. You're talking about the second event, the second expression. The second expression, Your Honor, I believe you're referring to the letter that I wrote on her behalf. I would call that the first. Okay. Didn't this, what you referred to as open and public support, occur after that? I believe it was throughout the course of these proceedings. My letter came essentially at the end of other expressions of her concern. See, the problem I'm having with the complaint is to find out what facts are in the complaint to show what she openly said when she openly supported the jury commissioners. Well, what are the facts? What did she say? When did she say it? To whom did she say it? Your Honor, that's a good question, but I'll have to say that we never got through pretrial discovery. This was a motion to dismiss that was denied by the court. And under Rule 8, I just briefly added statements of public support that she made. Now, I did not delineate explicitly in the complaint the day that she said that. A lot of this involved courthouse discussion, hallway gossip. You know the defendant Brewster has to determine based on the complaint whether she is entitled to qualified immunity. So what you have just said is that Herman went about the courthouse personally griping about her circumstances, not necessarily making public statements with a public purpose. So how would Brewster formulate a qualified defense claim if she doesn't know from the complaint itself what exactly Herman said and to whom and when and where? Well, Your Honor, it wasn't just a matter of gossip. My client would regularly take this to Roberta Brooklyner, and she would regularly say that if you look at the actual complaint that was filed with the judicial board, it's spelled out in detail why Judge Webbs and Roberta Brooklyner's actions were improper under today's law. So the real meat of this complaint was spelled out in that judicial complaint. And my client would repeatedly tell Roberta Brooklyner that you cannot tell me that you're my boss for all the reasons that my bosses are saying you acted improperly. So she would regularly cite this judicial complaint as her support for arguing to Roberta Brewster. This was not a pleasant situation. Every day these two individuals, Ms. Brewster and Ms. Herman, would meet. Ms. Brewster was attempting to assert supervisory authority over Mary Alice Herman, and Ms. Herman said, wait, hold it. You can't do that. You're not my boss. I don't know if I got off to Jonathan's question, but I thought we were pretty much at the same point. You just indicated that the complaint was to Ms. Brewster, yet the complaint said it was public. Explain that to me. Well, it was public in that this filing of the complaint by the jury commissioners against Judge Webb was publicly filed. Everybody knew it was filed. Judge Webb knew it was filed. He told my client he knew it was filed. It was under investigation. Ms. Brewster knew it was filed. There was nothing secret about the filing of the complaint against Judge Webb. But the filing of the complaint against Judge Webb was to protest his alleged illegal support of this usurpation of the function of the court administration and jury commissioners. So there was nothing private or behind the scenes or candid about that judicial file. We're not concerned here with the jury commissioner's protected speech. We're concerned with her protected speech. And I'm still struggling to see what it is she said and where she said it that was protected. Well, Your Honor, when the rubber hit the road, she was the one who was the basis for the whole thing. The complaint that was filed by the jury commissioners was their being upset over having their employee taken away from them. So in the last analysis, for the jury commissioners and Ms. Brewster, it's an academic argument. It's a fight between preserving their functions. But for my client, it was a fight to save her livelihood. If you were served with a motion for a more definite statement, what would you come up with? A more definite statement as to what exactly was said by Herman and when and where? Well, if that were to assume that such a motion were to be granted, I'm not sure if that would be granted under Rule 8. But if it were to be granted, I think I would explicitly spell out what she said. Perhaps e-mails, memos, documents, public statements, conversations that she would have had. My complaint is already quite lengthy, perhaps a lot more lengthy than I would have cared to make it. But you don't think that information should be part of a complaint in a case like this? Not really, no. After decades of filing complaints in federal court, I think that I'm already known for making my complaints perhaps lengthier than they should be. The more I read Rule 8 and case law interpretations of the Rule 8, there seems to be under notice pleading not that much of an impetus to make your complaint 185 paragraphs long. So I never really addressed that issue because that was not an objection or a motion that was filed. They filed the motion to dismiss based on some larger legal theories, including qualified immunity. But I suppose there very well could be a re-pleading here and more specificity in the complaint. Intellectually, academically, I oppose that. But if that would be a desire on the part of any court, I certainly could do that. Because I have the information in my file. I just didn't put it in the complaint. I figured we were going to get the pretrial discovery, and that would be the appropriate place to disseminate or disclose that information. Any further questions? Thank you very much. Just a couple of brief things, Your Honor. I think it's very significant that most of the clerk's brief and most of the argument today centered on the quote-unquote alleged violations of state law. While I don't concede that there's been any violation of state law here at all, and I don't think there's been any showing that there's been any strong Pennsylvania case law in support of the President's judge's assertion of control over court employees, that stress on the violation of state law in and of itself supports my qualified immunity argument, as I cited in my brief. Even a violation of state law does not deprive the actor of qualified immunity. Doe v. Dewey, which is this circuit's case, specifically held that officials do not forfeit qualified immunity from suit for violation of federal constitutional law because they fail to comply with clear state law. And the second thing that I want to clear up, and I realize that I may have created a misimpression, the letter that was sent in December shows carbon copies, and there's no carbon copy to either the President's judge or the court administrator, so there's no allegation in the complaint that they had any knowledge that such a letter was written, which is not to say that there wasn't this ongoing supervisory struggle, and that's the point that I really want to finish on. That's what this case is about. This case is about a very, very definite struggle over who is going to control, who is going to supervise this court employee. And I believe if your honors go back and read Garcia and you look at the circuit court cases, most of which were not in the circuit, which have construed Garcia, you will see that that kind of internal struggle over who supervises an employee is not speech as a citizen. What is the remedy that you are seeking? Is it a reversal of the qualified immunity holding or vacating and remanding? A dismissal of a complaint, reverse remand and dismissal of a complaint under the qualified immunity defense, which is an issue of law for this court. I think we have a very strong argument that you have to go to the first problem of qualified immunity defense. Is there a violation of the constitutional right here? Are the commissioners in a different situation than Roberta Brewster? I'm sorry, your honor. Are the commissioners in the same situation as Roberta Brewster on qualified immunity? The county commissioners? Yes. I certainly don't represent them and they do have other claims against them to some extent. They have an age discrimination claim against them. And I couldn't really speak to their first amendment issue, although I think their issues in terms of qualified immunity and the clear... In any event, your honor... We're only concerned with Roberta Brewster. It is my claim, your honor. The county provided counsel to the county commissioners. Thank you. Thank you. The case was very well argued. We will take the matter under advisement. The next matter...